UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RACHEL G.,

               Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.
_____

**DECISION AND ORDER**

1:23-CV-00711 EAW

## INTRODUCTION

Represented by counsel, plaintiff Rachel G. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 8; Dkt. 9). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is denied and the Commissioner's motion (Dkt. 9) is granted.

## BACKGROUND

Plaintiff protectively filed her application for DIB on February 8, 2021. (Dkt. 5 at 19, 81).[1] Plaintiff also filed an application for supplemental security income ("SSI")

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

pursuant to Title XVI of the Act that same day.  (*Id*. at 19).   In her applications, Plaintiff alleged disability beginning May 1, 2015.  (*Id*. at 19, 237).  Plaintiff's application for SSI was granted at the initial application stage, and she was determined to have been disabled as of the application date, February 8, 2021.  (*Id*. at 19, 83-104).

Plaintiff's application for DIB was initially denied on May 26, 2021.  (*Id.* at 19, 135-39).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Victoria Ferrer, who issued an unfavorable decision on July 12, 2022.  (*Id*. at 16-38).  Plaintiff requested Appeals Council review; her request was denied on May 19, 2023, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 5-10).  This action followed.

## LEGAL STANDARD

### I.     District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation

omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity

("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## **DISCUSSION**

**I.     The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2019. (Dkt. 5 at 22). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 1, 2015, the alleged onset date. (*Id*.).

At step two, the ALJ found that from the alleged onset date through the date last insured, Plaintiff suffered from the severe impairment of bipolar disorder. (*Id.*). The ALJ

further found that Plaintiff's medically determinable impairments of hypothyroidism and obesity were non-severe. (*Id*. at 22-23).

At step three, the ALJ found that from the alleged onset date through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 24). The ALJ particularly considered the criteria of Listing 12.06 in reaching her conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that from the alleged onset date through the date last insured, Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the following additional nonexertional limitations:

> [Plaintiff] could perform simple and detailed, but not complex tasks; she could not interact with the public; she could not perform team tasks with coworkers; she was not able to perform fast paced, high production demands, such as assembly line work, but was able to meet production quotas in a shift; and, she could adapt to occasional changes in the work setting.

(*Id.* at 25-26). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 31).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could have performed, including the representative occupations of floor waxer, nighttime housekeeper, and dishwasher. (*Id.* at 32-33). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act from the alleged onset date through the date last insured. (*Id.* at 33).

## II. The ALJ's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to vacate the ALJ's decision and remand this matter to the Commissioner, arguing that "[t]he ALJ assessed an RFC that was not based on substantial evidence after rejecting the opinions of record because they did not pertain to the relevant period, relying on her lay opinion, and failing to develop the record for a retrospective opinion despite the clear gap." (Dkt. 8-1 at 1). The Court is unpersuaded by this argument, for the reasons that follow.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). "[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). However, an ALJ is not a medical professional, and therefore she "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).

Plaintiff argues that the ALJ in this case "improperly relied upon her own lay opinion rather than on the opinions of medical professionals after rejecting the opinions of record because they did not pertain to the relevant period for the Title II claim." (Dkt. 8-1 at 9). This argument is incorrect as a factual matter. The ALJ did not reject the opinion of reviewing psychologist Dr. J. May. (*See* Dkt. 5 at 29). Dr. May reviewed Plaintiff's full medical record for the period from the alleged onset date to the date last insured, and opined on July 7, 2021, that Plaintiff had no limitations in understanding, remembering or applying

information, mild limitations in interacting with others, mild limitations in concentrating, persisting, or maintaining pace, and mild limitations in adapting or managing herself. (*Id*. at 126). Dr. May further opined that Plaintiff's bipolar disorder was non-severe during the relevant time period. (*Id*. at 128).

The ALJ found Dr. May's opinion "more persuasive," noting that "the complete medical records prior to the date last insured were before him when he made the opinion in July 2021" and that his opinion was generally consistent with the medical evidence of record. (*Id*. at 29). However, the ALJ disagreed with Dr. May's conclusion that Plaintiff's bipolar disorder was non-severe, "based on the evidence at the hearing level." (*Id*.).

The ALJ also did not reject the opinion of nurse practitioner ("NP") Elizabeth Greis. NP Greis completed a function report for Plaintiff on May 25, 2021, in which she opined—among other things—that Plaintiff's "[m]ental health symptoms interfere with her ability to be social and interact with others," that changes in routine could "cause some stress and increase in mental health symptoms," and that Plaintiff "consistently struggle[s] with energy/motivation, task completion." (Dkt. 5 at 829-36). The ALJ explained that she was not "fully persuaded" by NP Greis's opinion, because NP Greis did not begin treating Plaintiff until after the date last insured, because NP Greis's opinion contained some conflicting statements, and because NP Greis's conclusion that some of Plaintiff's symptoms were side effects of her medication was inconsistent with her treatment records. (*Id*. at 31). Nonetheless, the ALJ considered NP Greis's opinion and "limitations in interactions with others, work setting changes and the pace of the work . . . [were] included in the residual functional assessment." (*Id*.).

Plaintiff is thus incorrect when she contends that the ALJ rejected all the medical opinions of record and formulated the RFC finding based on her own lay opinion. The ALJ did not reject Dr. May's opinion (which she described as generally consisted with the medical evidence of record), but concluded based on the evidence presented at the hearing level that Plaintiff's limitations were somewhat more significant than assessed by Dr. May. The ALJ also did not reject NP Greis's opinion, but adopted in part the limitations identified therein, including limitations in interacting with others, adapting to changes in the work setting, and maintaining the pace of work. The ALJ also identified the specific portions of Plaintiff's hearing testimony that supported the additional non-exertional limitations included in the RFC finding. (*See* Dkt. 5 at 28-29). In other words, the ALJ based the RFC finding on Dr. May's opinion, NP Greis's opinion, and the other evidence of record, including Plaintiff's own testimony. This was within the ALJ's discretion. *See, e.g., Ramsey v. Comm'r of Soc. Sec.,* 830 F. App'x 37, 39 (2d Cir. 2020) ("[T]he ALJ occasionally deviated from consultative examiners' recommendations to decrease Ramsey's RFC based on other evidence in the record, exemplified by the ALJ's determination that Ramsey should not interact with the public. The ALJ committed no error by determining the scope of Ramsey's RFC because that is his responsibility."); *Beaman v. Comm'r of Soc. Sec.*, No. 1:18-CV-1344 EAW, 2020 WL 473618, at *5 (W.D.N.Y. 2020) (holding that "[p]laintiff's argument that the ALJ based her highly specific RFC based upon her own lay opinion necessarily fails[;] [i]t is clear that the ALJ fashioned her RFC finding by referring to [the consultative examiner's opinion] and incorporating additional restrictions based on [p]laintiff's own testimony"); *Catalfamo v.*

*Berryhill*, 17-CV-0496-JWF, 2019 WL 1128838, at *2 (W.D.N.Y. 2019) (rejecting argument that ALJ improperly substituted his own lay opinion where ALJ gave "little weight" to two medical opinions and "impose[d] more restrictions than th[ose] two opinions suggested were necessary").

Plaintiff's argument that there was a gap in the record also fails as a factual matter. Plaintiff contends that "the ALJ should have developed the record for a retrospective opinion relating to the relevant period with which to interpret the raw medical data[.]" (Dkt. 8-1 at 14). However, Dr. May reviewed the medical records from the relevant time period and issued an opinion regarding Plaintiff's functioning. That the ALJ did not find Dr. May's opinion fully persuasive did not create a gap in the record, because the ALJ had sufficient other evidence from which to make a disability determination. *See Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) ("The ALJ is not required to develop the record any further when the evidence already presented is adequate for [the ALJ] to make a determination as to disability.").

Finally, Plaintiff argues that "the Agency found Plaintiff disabled for the purposes of her Title XVI claim from the application date of February 8, 2021, forward" and that there was "no clear worsening in the record at that time, leading to the conclusion that the opinion evidence supported the finding of disability at the later date, but that this disabling impairment was still present during the relevant period[.]" (Dkt. 8-1 at 18). This argument lacks merit. The fact that Plaintiff was determined to be disabled as of February 2021 provides no material information regarding whether she was disabled between May of 2015 and December of 2019. *See Hairston-Scott v. Comm'r of Soc. Sec.*, No. 20-758, 2021 WL

3777581, at *2 (2d Cir. Aug. 26, 2021) ("The March 2019 Decision, which found Hairston-Scott disabled as of September 14, 2018, is not material to her disability claim here because it did not concern the relevant period for which she sought disability benefits—January 21, 2014 through June 30, 2017.").

In sum, the Court finds no merit to Plaintiff's contention that the ALJ "assessed an RFC that was not based on substantial evidence after rejecting the opinions of record because they did not pertain to the relevant period, relying on her lay opinion, and failing to develop the record for a retrospective opinion despite the clear gap." (Dkt. 8-1 at 1). As set forth above, the ALJ based the RFC finding on the evidence of record, including the opinions of Dr. May and NP Greis. Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 9) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 28, 2024
      Rochester, New York